IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EJS Investment Holdings, LLC<br>Plaintiff,<br><br>v.<br><br>David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP, Brown Rudnick, LLP<br>Defendants, | Civil Action File<br>No. 4:26-cv-00334<br><br>Jury Trial Demanded<br><br>To the Honorable Alia Moses, Chief United States District Judge: |

**PLAINTIFF'S SUR-REPLY ADDRESSING NEW AUTHORITY IN DEFENDANTS FREEMAN'S AND JACKSON WALKER'S REPLIES IN SUPPORT OF THEIR MOTIONS TO DISMISS**

In their replies, Freeman and Jackson Walker cite a memorandum opinion issued in the Houston Bankruptcy Court ten days after Plaintiff filed its responses. *See In re Sorrento Therapeutics, Inc.*, No. 23-90085, ECF No. 2711 (Bankr. S.D. Tex. June 21, 2026) (mem. op.). They argue that this memorandum opinion granting a motion to enforce a bankruptcy plan supports their Rule 12(b)(6) arguments, particularly on standing.[1] In fact, the meaningful differences between *Sorrento* and this case actually further defeat Defendants' standing arguments and reinforce Plaintiff's standing here.

---

[1] *See* Freeman Reply, ECF No. 44 ¶ 17; Jackson Walker Reply, ECF No. 47 ¶¶ 17, 21, 23–24, 29.

## I. *Sorrento* is inapposite because the shareholder Plaintiffs there had actual knowledge and notice of the Jones-Freeman relationship before the plan confirmation.

In *Sorrento*, a group of shareholders sued board of trustees' members and Jackson Walker, among others, in connection with Sorrento's Chapter 11 bankruptcy. Notably, the *Sorrento* Plaintiffs brought their suit despite already pending litigation by the liquidation trustee "based on allegations nearly identical to those in the Complaint."[2]

The timing of events in *Sorrento* is important. In *Sorrento*, the bankruptcy plan was confirmed on November 30, 2023, by Judge Christopher Lopez after Jones had already been removed (on October 13, 2023), from the case. At the time of the *Sorrento* confirmation hearing, Jones had already publicly acknowledged his relationship with Freeman, the Fifth Circuit had already filed its complaint finding probable cause of his misconduct, and Jones had already left the bench. Not only did the foregoing occur ahead of the confirmation hearing, but the plaintiff shareholders also actually objected to Jackson Walker's application for attorneys' fees on the basis of the Jones-Freeman relationship.[3]

Here, EJS did *not* have notice or knowledge of "the potential legal defect they now complain of" at the time of the confirmation hearing.[4] Unlike the *Sorrento* shareholders, EJS could not have objected to the plan confirmation, seek Jones's recusal, challenge Jackson Walker's (or other) professional retention(s), oppose compensation to Jackson Walker (and others), and/or pursue appellate review of the plan confirmation on the basis of the conflict

---

[2] *In re Sorrento Therapeutics, Inc.*, No. 23-90085, ECF No. 2711 at 29 (Bankr. S.D. Tex. June 21, 2026) (mem. op.).

[3] *Id.* at 10, 50 n. 31.

[4] *Id.* at 35.

caused by the compromising relationship between Jones and Freeman, which remained concealed by Jones, Freeman and others, throughout the entirety of the Chesapeake bankruptcy.

Jones signed the confirmation order in Chesapeake on January 13, 2021,[5] more than *two years before* he acknowledged his relationship with Freeman. During this time, the defendants actively concealed the relationship, obstructing EJS and other bankruptcy participants from knowing about, objecting to, and/or appealing the confirmation on the basis of the relationship.[6]

*Sorrento* relied on the shareholders knowledge of the Jones-Freeman relationship; that confirmation proceeded before a different judge; that objections involving the relationship could have been (and were) made concerning the relationship; and that the trustee litigation had already been initiated and was then-pending. *None* of those significant predicates exist here.

**II. *Sorrento* involved classic derivative injuries; EJS alleges a direct injury arising from redistribution of value among creditor classes.**

More importantly, the substance of EJS's claims are materially different than those asserted by the shareholders in *Sorrento*. The *Sorrento* shareholders' lawsuit asserted derivative claims that clearly belonged to the estate. Specifically, the *Sorrento* plaintiffs sought recovery for "[d]iminution in the value of equity[,]" which was harm that necessarily flowed from harm to the debtor.[7]

---

[5] *In re Chesapeake Energy Corporation*, No. 20-33233, ECF No

[6] *EJS Investment Holdings, LLC v. David R. Jones et al.*, Complaint, ECF No. 1 ¶¶ 10, 85, 94, 111.

[7] *Sorrento*, No. 23-90085, ECF No. 2711 at 12, 41.

By contrast, Plaintiff explicitly pleaded harm that impacted only Class 5 and 6 Creditors, and *not* Chesapeake. Notwithstanding Defendants repeated insistence, Plaintiff's theory here is *not* that the estate lost value. Rather, the Complaint describes an unlawful wealth transfer that harmed only certain creditors, but did not harm the estate.[8] This is not a recasting of pleadings—EJS expressly alleged that Defendants conspired to reward repeat, institutional creditors (while ensuring red carpet treatment on professional fees) by implementing an "inappropriate value transfer from other creditors to first lien creditors[,]" stripping "Plaintiff and other Class 5, 6 and 7 creditors of millions of dollars in value while providing first lien creditors an illegal 200+% return on the pre-bankruptcy value of their claims."[9] This plan included the rejection of EJS' lawful alternative plan, causing EJS to suffer at least $64 million in bond value.[10] The estate did not suffer any harm from this misallocation.

In essence, the Complaint alleges the estate possesses a finite pool of value and that Defendants manipulated the confirmation process, unlawfully redistributing value from one creditor class to another. Chesapeake itself was not poorer—i.e., did *not* lose value-- because of that redistribution.

*Sorrento* recognized that the Fifth Circuit has held that determining whether a cause of action belongs to the estate requires the court "to focus on the nature of the injury alleged[.]" *Sorrento*, No. 23-90085, ECF No. 2711 at 38 (quoting *In re Seven Seas Petroleum, Inc.*, 522 F.3d

---

[8] *EJS*, Complaint, ECF No. 1 ¶¶ 75, 81.

[9] *Id.*

[10] *Id.* ¶ 16; *see also*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (holding that the bankruptcy court should "confirm a plan only if the court finds, inter alia, that the plan complies with the 'applicable provisions' of the Code.... [T]he Code makes plain that bankruptcy courts have the authority — indeed, the obligation — to direct a debtor to conform his plan to the requirements of" the Bankruptcy Code).

575, 584 (5th Cir. 2008)). The injury to EJS and other Class 5 and 6 creditors resulted from an unlawful redistribution of value among creditor classes rather than an injury to Chesapeake itself. As in *Seven Seas*, the harm alleged is to the bond holders, *not* the debtor, meaning the claims do *not* belong to the estate. *Seven Seas*, 522 F.3d at 586.

### III. Unlike *Sorrento*, EJS pleaded its intent to move for standing to assert any remaining derivative claims.

As Plaintiff already acknowledged, some of its claims may be derivative in nature. EJS's assertion that unlawful and exorbitant fees diminished funds available to pay creditors is a derivative injury that stems from harm to the estate. EJS's Complaint announces its intent to pursue these claims through appointment and/or derivative standing.[11] In contrast, the shareholder plaintiffs in *Sorrento* did not plead their intent to move for standing to assert derivative claims. This was particularly problematic because in *Sorrento*, the liquidating trustee was already asserting them. Here, the party that would have otherwise been permitted to assert any limited claims that may be derivative on behalf of the creditors—the Creditors' Committee—has long-since been dissolved and regardless, was also fatally conflicted.[12] Moreover, and unlike *Sorrento*, there is no danger here that Plaintiff seeks to usurp claims that could be, or are already being, pursued on behalf of the estate.

### IV. Unlike *Sorrento*, this case involves void or voidable orders.

Finally, the plan in *Sorrento* was approved by an order issued by Judge Lopez, not the then already de-robed Jones. Unlike this case (and others), the *Sorrento* court was not in a position of considering whether the plan the defendants were seeking to enforce, a plan that

---

[11] *EJS*, ECF No. 1 ¶ 107.

[12] *Id*.

had been approved by a judge subject to mandatory disqualification, was void or otherwise unenforceable. *See generally In re Thomas*, 223 Fed. Appx. 310, 313–14 (5th Cir. Mar. 1 2007) (unpubl. op.). Defendants here effectively seek enforcement of a fraudulent order, built to insulate them from their misdeeds, which they entered and had approved by a judge acting in concert who was subject to mandatory disqualification from the very beginning.

Finally, even if *Sorrento* could be read to support Freeman's or Jackson Walker's position—which it cannot—it is a bankruptcy court memorandum opinion interpreting a materially different record and cannot override controlling Fifth Circuit authority, including *Seven Seas*.

**Conclusion**

As described, the recently issued *Sorrento* memorandum opinion does nothing to diminish Plaintiff's claims in any respect. If anything, the *Sorrento* opinion provides further support for Plaintiff here. This Court should deny Freeman and Jackson Walker's motions to dismiss.

Respectfully submitted,

By: */s/ Mikell A. West*

Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012436
S.D. Tex. Bar No. 2032287
Jessica W. Breitbeil
Texas State Bar No. 24013711
S.D. Tex Bar No. 24844 (*re-admission forthcoming)*
BANDAS LAW FIRM, P.C.
555 Carancahua Street, Suite 1200
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com
jbreitbeil@bandaslawfirm.com

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on July 15, 2026, I electronically filed the foregoing instrument with the Clerk of the Court using CM/ECF system which provides notification to all counsels of record.

*/s/ Mikell A. West*
Mikell A. West